David J. Kaloyanides SBN 160368
E: djpkaplc@me.com
**DAVID J.P. KALOYANIDES**
A PROFESSIONAL LAW CORPORATION
14726 Ramona Avenue, Suite 108
Chino, CA 91710-5730
T: (213) 623-8120

Attorney for Defendant
Raymond Diaz

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 5:18-CR-00171 TJH (02) |
| Plaintiff, | |
| vs. | DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PRESENTENCE REPORT AND RECOMMENDATION; MEMORANDUM OF POINTS AND AUTHORITIES |
| RAYMOND DIAZ, | |
| Defendant. | |
| | Sentencing Hearing: 16 March 2020 |
| | Hearing Time:         10:00 |
| | Courtroom:         9B First Street |
| | Hon. Terry J. Hatter, Jr. |

Defendant Raymond Diaz, by and through his attorney of record in this case, David J. Kaloyanides, hereby submits this Position re Sentencing and Objections to the Presentence Report and Recommendation and the accompanying Memorandum of Points and Authorities in support.

Based on an analysis of the sentencing factors set forth in 18 U.S.C. §3553(a), including an analysis of the advisory Sentencing Guidelines sentencing range, the appropriate sentence for defendant in this case is time served of one day to be followed by Supervised Release for a term of 3 years on the terms and conditions set forth in the Sentencing Recommendaiton Letter from the United States Probation Office , a special assessment of $100.00 which is mandatory, restitution in the amount of $591.86, and a waiver of all fines as defendant lacks the ability to pay any fine.

Defendant reserves the right to supplement the arguments in support of the sentencing position up to and including the date of sentencing.

Respectfully submitted,

Date:  3 March 2020                           s/ *David J. Kaloyanides*

David J. Kaloyanides
Attorney for Defendant
Raymond Diaz

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The most effective means of achieving the goals of sentencing in this case is to provide continued rehabilitation and treatment for Mr. Diaz. A time served sentence to account for the one-day of custody Mr. Diaz has served allows the Court to craft a term of Supervised Release that will allow Mr. Diaz to continue his rehabilitation and treatment that the Court has afforded him throughout this case. Mr. Diaz's treatment on pretrial release had a bumpy start. However, as the Court has seen, with time he has improved. Over time, he has deepened his commitment to freeing himself from his addiction disease. While his progress is not without set-backs, his progress continues. The Court should craft a sentence that allows that progress to continue, for then the goals of sentencing will be met.

The Court should impose a time-served sentence of one-day to be followed by a 3 year term of Supervised Release. The mandatory special assessment of $100.00 is mandatory and must be imposed. The Court should order restitution in the amount of $591.86 payable to Fingerhut. And the Court should waive all fines, as Mr. Diaz lacks the ability to pay a fine.

### II. BACKGROUND FACTS

Mr. Diaz was charged in three counts of a Six Count Indictment filed 6 June 2018. The Indictment also named Mr. Diaz's uncle, Ernesto Diaz, charging him with

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

violations of 18 U.S.C. §922(g)(1), felon in possession of a firearm, 18 U.S.C. §1029(a)(2), use of unauthorized access device with intent to defraud, and 18 U.S.C. §1028A, aggravated identity theft. Mr. Raymond Diaz was not named in these three counts alleged against his uncle.

Mr. Raymond Diaz was named in three separate counts, namely 18 U.S.C. §1344, bank fraud, 18 U.S.C. §1028A, aggravated identity theft, and 18 U.S.C. §1029(a)(3), possession of at least fifteen unauthorized access devices.

This case in reality constituted two separate cases—the offense conduct of Mr. Raymond Diaz was separate from that of his uncle. The only link between them was that Raymond Diaz was engaging in his conduct at his uncle's home at the time federal law enforcement officers executed a search warrant at the uncle's home relating to an investigation into the uncle's criminal activities. Raymond Diaz was never a target of the investigation. He happened to be at the residence at the time.

Mr. Diaz had taken his father-in-law's information, used it to purchase $591.86 worth of merchandize, and open a PayPal Credit Account without authorization. At the time of the search, law enforcement officers also found a file folder or document binder containing paperwork that included the names, addresses and Social Security numbers of 32 individuals. There is no information that Mr. Diaz was attempting to use any of that information as part of his offense conduct in opening the PayPal Credit Card account in the name of his father-in-law.

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

On 9 January 2019, Mr. Diaz entered a plea agreement with the government, which was subsequently filed on 14 January. Because of Mr. Diaz's on-going drug treatment issues while on pretrial release, Mr. Diaz did not formally enter his change of plea until 18 December 2019.

Pursuant to the Plea Agreement, Mr. Diaz pled guilty to Count Four of the Indictment, which charged him with bank fraud in violation of 18 U.S.C. §1344(2). Mr. Diaz admitted that he obtained his father-in-law's personal identifying information and used that information to open a PayPal Credit account without permission, thereby falsely representing to PayPal Credit and Comenity Capital Bank that he was authorized to open the account and use the account. Mr. Diaz also admitted that at the time law enforcement officers executed the search warrant, he had possesion of personal identifying information of 32 other people, which included names, address, and Social Security numbers.

Mr. Diaz and the government stipulated that under the advisory Sentencing Guidelines, the Base Offense Level was 7, pursuant to U.S.S.G. §2B1.1(a)(1), and that a two-level increase should be applied under §2B1.1(b)(1)(B) because the intended loss was over $6,500.00. The parties reserved the right to argue for additional specific offense characteristics, adjustments and departures as well as to argue for a sentence outside the sentencing range established by the advisory Sentencing Guidelines.

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

The government agreed to move to dismiss the remaining counts against Mr. Diaz at the time of sentencing. The parties also stipulated that Mr. Diaz would be required to pay restitution, which the parties estimated was $2,548.70, while agreeing that the restitution amount was subject to change based on additional evidence that might be presented.

The plea agreement also included a waiver of appeal of the conviction and a limited mutual waiver of appeal of the sentence. However, the Court did not accept those provisions as part of accepting the plea.

The Presentence Report and Recommendation were disclosed 10 February 2020. The Probation Office calculated the Base Offense Level at 7 but did not find that the two-level increase for loss exceeding $6,500 applied because the Probation Office did not receive information sufficient to establish the total intended loss attributable to Mr. Diaz as compared with his uncle. The Probation Office used the amount of $591.86 that it could determined was the actual loss as the total loss amount.

However, the Probation Office concluded that a two-level increase should be applied under §2B1.1(b)(11)(C)(i) because Mr. Diaz used another person's information to open the PayPal Credit account. After adjusting the offense level for acceptance of responsibility, the Probation Office concluded that the Total Adjusted Offense Level was 7.

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Probation Office calculated Mr. Diaz's criminal history points at 4 resulting in a Criminal History Category of III. The advisory Sentencing Guideline Range for Offense Level 7 Criminal History Category III is 4 to 10 months.

As the Court is well-aware, Mr. Diaz struggled with his substance abuse issues during his pretrial release. He has undergone several treatment programs including intensive outpatient as well as residential drug treatment. Over time, Mr. Diaz has been able to do better in treatment and with the residential programs and his current outpatient treatment. He sought programs on his own as well as through Pretrial Services, and he has continued with both his substance abuse treatment and mental health therapy. While he has had some setbacks, he has progressed during the time of his pretrial supervision.

On 19 February, Mr. Diaz interviewed with the United States Probation Office to complete the Presentence Report and Recommendation. Mr. Diaz discussed the tragic details of his troubled upbringing. His parents both suffered from addiction disease. His mother was addicted to crack cocaine and methamphetamine and suffered from bipolar disorder and schizophrenia. His father was addicted to methamphetamine alone. Because of the drug abuse, Mr. Diaz was taken from his parents when he was only 4 years old. He was raised by his grandmother from that time.

Unfortunately, his grandmother also struggled as most of her children also were dealing with drug abuse and were active in gang life in South Gate. Ultimately,

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

Mr. Diaz and his grandmother were forced to move to escape the neighborhood's gang and drug problems.

Mr. Diaz suffered additional trauma in elementary school. In third grade, in an after school program, he was gang-raped by three older boys in the program. He never told anyone about the attack until he was 14 years old. It was at the time he came out to his family that he was gay when he also told them about the assault. Yet instead of providing the love and support that one would expect from a family, Mr. Diaz was ostracized. Consequently, he looked for support from other young people who turned out to be a dangerous influence on him. At this young age he began drinking and experimenting with drugs to fit in. However, none of this provided him with the support he needed. He attempted suicide during this period.

Mr. Diaz was around 13 when he first started smoking marijuana. By age 16, he was using methamphetamine. Mr. Diaz's addiction grew into a daily marijuana use as well as a daily methamphetamine habit of 3.5 grams—a $200 per week habit—until the day of his arrest in this case.

As the Court is aware, Mr. Diaz has struggled through his pretrial supervision with his addiction disease. However, but for a marijuana use over the holidays, Mr. Diaz has been progressing well. He knows what his issues are and what steps he needs to take in order to continue to improve. He is committed to his rehabilitation and treatment, and understands that this is critical for his success in life.

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

1  III.  DISCUSSION

2

3  A. OBJECTIONS TO THE PRESENCE REPORT AND
RECOMMENDATION

4

5      Mr. Diaz has no objection to the PSR's calculation of the Total Adjusted

6  Offense Level of 7.

7      Mr. Diaz has no objection to the PSR's calculation of the criminal history

8  points or the Criminal History Category of III.

9

10     As of the filing of this Sentencing Position, Mr. Diaz has not received a

11 revised PSR that includes the information from his presentence interview.

12

13        B. STATUTORY SENTENCING FACTORS

14

15     The fundamental principle at sentencing is that the District Court must begin

16 by correctly calculating the applicable Guidelines range. *See Gall v. United States*,

17 552 U.S. 38, 49, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007). Calculating the

18 advisory Guideline offense level and sentencing range is the beginning of the

19 analysis in sentencing and "the benchmark" for determining the appropriate

20 sentence. *See Kimbrough v. United States*, 552 U.S. 85, 108, 128 S. Ct. 558, 169 L.

21 Ed. 2d 481 (2007). The Court's application of the Sentencing Guidelines to those

22 factual findings are a matter of the sentencing Court's sound discretion. *See United*

23 *States v. Augare*, 800 F.3d 11873, 1174 (9th Cir. 2015).

24

25                9

The correctly calculated advisory Guideline Sentencing Range in this case is 4-10 months imprisonment. As the Court has seen from Mr. Diaz over the last year of his pretrial release, he has suffered from a serious methamphetamine addiction. It is this addiction that contributed in significant part to the offense conduct in this case.

When considering the goals of sentencing as set forth in §3553(a), the Court should not elevate any one goal over another. All the goals of sentencing—punitive, rehabiliative, deterrance—all should be given equal weight in determining the appropriate, fair and just sentence. What is clear in this case is that treating Mr. Diaz's serious drug addiction is the best means of achieving most of those goals. Allowing Mr. Diaz to continue his treatment and drug rehabilitation, his mental health treatment and therapy, will achieve the goals of protecting society and preventing recidivism because Mr. Diaz will no longer be in the cycle of criminal conduct resulting from the need to feed his addiction disease. His rehabilitation and therapy is giving him the life skills and tools to help him move toward a productive life in society thereby ensuring he will not commit crimes in the future.

The proposed sentence of time served of one-day to be followed by a 3 year term of supervised release promotes respect for the law because this sentence is designed to address the Mr. Diaz's individual circumstances. Society is encouraged to respect the law when the law is fair in principle and as applied. Seeing that our criminal justice system is not solely about punishment helps garner support for and

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

respect of the law that allows the Court to craft sentences to address the underlying causes of and factors contibuting to criminal behavior.

This is not to say that Mr. Diaz's offense is not serious. Using another person's personal identifying information for fraud creates significant hardship for the individual victim, financial institutions involved, as well as society's trust in those institutions. Punishment for this type of criminal conduct is necessary to communicate not only to the defendant but to society that such conduct will not be tolerated.

But punishment must be fair. The sentence imposed for any criminal offense must be sufficient but not greater than necessary to achieve all the goals of sentencing. *See* 18 U.S.C. §3553(a). Here, the question for the Court to determine is what, if any, goal is served by an additional four months of custody? Custody is not the only form of punishment. A 3-year term of Supervised Release is a form of punishment as it substantially restricts one's individual liberties and constitutional rights. And the request for a 3-year term of Supervised Release, which is more than what Probation is seeking, is designed to take into account what is truly needed in this case—continued treatment and rehabilitation to ensure that Mr. Diaz comes through this experience able to engage in society productively as a law-abiding citizen.

To this end, Mr. Diaz requests that the Court recommend that he be evaluated for the Court's Substance Abuse Treatment and Reentry Program (STAR). This

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR

program would best serve Mr. Diaz's needs and further the goals of sentencing to protect the public, provide Mr. Diaz with needed treatment, guard against recidivism, while taking into account the severity of the offense in light of Mr. Diaz's own background and personal circumstances in a just and fair manner.

IV.  CONCLUSION.

Accordingly, the Court should impose a sentence of time served of one-day to be followed by a 3-year term of Supervised Release. The Court must impose a $100.00 special assessment as that is mandatory. The Court should order resitution in the amount of $591.86 and order that all fines should be waived, as Mr. Diaz lacks the ability to pay any fine. Finally, the Court should recommend that Mr. Diaz be evaluated for the STAR program.

Respectfully submitted,

Date:  3 March 2020                 s/ *David J. Kaloyanides*
                                   David J. Kaloyanides
                                   Attorney for Defendant
                                   Raymond Diaz

DEFENDANT'S POSITION RE SENTENCING AND OBJECTIONS TO PSR